IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD PHILLIPS,

        Petitioner,

v.

CHARLOTTE JENKINS,
Warden,

        Respondent.

CASE NO. 5:17 CV 184

JUDGE JEFFREY J. HELMICK

**<u>MEMORANDUM
OPINION & ORDER</u>**

      Petitioner Ronald Phillips, a state prisoner sentenced to death by an Ohio jury in 1993, has now filed in this Court his third petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) In it, he contends that his death sentence violates the Eighth Amendment's ban on cruel and unusual punishment and the Fourteenth Amendment's guarantees of equal protection and due process because he was nineteen years old at the time of his underlying offense and trial. (ECF No. 1 at 5-9.) Respondent Warden Charlotte Jenkins ("Respondent") moves to transfer Phillips' petition to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1631 for a determination of whether it is barred as a "second or successive" petition under § 2244(b) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b). (ECF No. 5.) Phillips has filed a responsive brief opposing the motion (ECF No. 9), to which Respondent has replied (ECF No. 10). For the following reasons, Respondent's motion to transfer is granted.

## I. Relevant Background

Phillips was convicted and sentenced to death by an Ohio jury in 1993 for the aggravated murder, felonious sexual penetration, and rape of Sheila Marie Evans, the three-year-old daughter of Phillips' girlfriend. *See State v. Phillips*, 74 Ohio St. 3d 72, 73-76 (Ohio 1995). He was nineteen years old at the time of his crime and trial. *Id*. at 105. Ohio courts affirmed his convictions and sentences on direct appeal and post-conviction review. *See id.* at 77 (direct appeal); *State v. Phillips*, 2002 WL 274637, at *1 (Ohio Ct. App. Feb. 27, 2002) (post-conviction), *jurisdiction denied*, 95 Ohio St. 3d 1488 (Ohio 2002).

Phillips first sought federal habeas corpus relief in this Court in 2003, raising twenty-five claims, some of which related to his young age when he committed his capital offense. He complained, for example, that his counsel were ineffective for failing to question prospective jurors about the mitigating factor of his youth (*see* No. 5:03cv875, ECF No. 12-1 at 28-29), and that the Ohio courts did not adequately weigh and re-weigh the mitigating factors and aggravating circumstances in determining his sentence, including his youth and emotional immaturity (*see* No. 5:03cv875, ECF No. 12-1 at 65).

This Court denied Phillips' petition on September 29, 2006. *Phillips v. Bradshaw*, No. 5:03cv875, 2006 WL 2855077 (N.D. Ohio Sept. 29, 2006). The Sixth Circuit affirmed that decision on June 1, 2010. *Phillips v. Bradshaw*, 607 F.3d 199 (6th Cir. 2010). The United States Supreme Court denied Phillips' petition for writ of certiorari on March 7, 2011. *Phillips v. Bradshaw*, 562 U.S. 1274 (2011).

Also in 2011, Phillips joined more than 100 Ohio inmates sentenced to death in filing a civil rights complaint under 42 U.S.C. § 1983 in the District Court for the Southern District of

Ohio, challenging Ohio's execution procedures and protocols. The case, now entitled *In re Ohio Execution Protocol* ("*In re OEP*"), remains pending. (Case No. 2:11cv1016.)[1]

Phillips filed a second petition for writ of habeas corpus in this Court on September 17, 2012. (Case No. 5:12cv2323; ECF No. 1.) He asserted two claims in the petition, both challenging Ohio's lethal-injection protocol. (*See* Case No. 5:12cv2323; ECF No. 1 at 13-15, 18-19.) The respondent moved to transfer Phillips' petition to the Sixth Circuit pursuant to 28 U.S.C. § 1631 as an unauthorized "second or successive" petition under 28 U.S.C. § 2244(b). (Case No. 5:12cv2323; ECF No. 8 at 2.) On August 2, 2013, this Court determined that the petition was not successive and therefore barred by § 2244(b), but transferred it to the District Court for the Southern District of Ohio for further proceedings as it was related to *In re OEP*, which was pending in that court. (Case No. 5:12cv2323; ECF No. 15.) The district court subsequently denied Phillips' petition. *Phillips v. Robinson*, 2013 WL 5441772, at *6 (S.D. Ohio Sept. 27, 2013) (Frost, J.).

Meanwhile, on December 16, 2011, the Ohio Supreme Court set Phillips' execution date for November 14, 2013. *State v. Phillips*, Ohio Supreme Court Case No. 1994-2208. Since then, Governor John Kasich has granted Phillips several warrants of reprieve, most recently moving his execution date to July 26, 2017. (*See, e.g.,* ECF No. 1 at 14, 15, 18; ECF No. 12-1.)

---

[1] On January 26, 2017, the district court granted in part a motion for preliminary injunction that Phillips and two other inmates had filed in *In re OEP* and stayed their executions. *In re Ohio Execution Protocol*, 2017 WL 489738 (S.D. Ohio Jan. 26, 2017) (Merz, M.J., having plenary magistrate judge jurisdiction by consent of all parties). The State of Ohio appealed, and on April 6, 2017, the Sixth Circuit affirmed. *In re Ohio Execution Protocol*, 853 F.3d 822 (6th Cir. 2017). On April 25, 2017, the circuit court vacated that opinion and granted a rehearing en banc. *In re Ohio Execution Protocol,* – F.3d –, 2017 WL 1457946 (6th Cir. Apr. 25, 2017). On June 28, 2017, the court reversed the district court's grant of a preliminary injunction. *In re Ohio Execution Protocol,* – F.3d –, 2017 WL 2784503 (6th Cir. June 28, 2017).

Phillips now has filed a third habeas corpus petition in this Court. (ECF No. 1.) In it, he raises two claims premised on the fact that he was nineteen years old at the time of his offense and trial. In his first claim, he asserts that the execution of defendants under twenty-one years old violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantees of equal protection and due process. (ECF No. 1 at 51-69.) He argues:

> [D]uring the passage of time [since he was convicted] – nearly a quarter century – our societal understanding of youth, and the culpability that we assign to youthful offenders, has changed so dramatically that it has rendered [Phillips'] death sentence void or voidable. Because of medical and scientific advances that have fundamentally altered our understanding of adolescent brain development and natural evolution in or standards of decency, the reliability of Phillips' death sentence is significantly undermined to the point it is no longer reliable.

(ECF No. 9 at 8.) Phillips relies primarily on two Supreme Court decisions to support this argument: *Roper v. Simmons*, 543 U.S. 551 (2005), which held that it is unconstitutional to impose the death penalty on juveniles under age eighteen; and *Hall v. Florida*, 134 S. Ct. 1986 (2014), which held unconstitutional Florida's rigid rule regarding I.Q. scores in determining whether a person is intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002).

In his second claim, Phillips contends that, in the alternative, his death sentence should be vacated because his youthful characteristics were not properly considered and weighed at trial as mitigating factors in determining his sentence, violating the Eighth and Fourteenth Amendment rights to be free from a disproportionate penalty. (ECF No. 1 at 69-79.) He requests a new sentencing hearing at which the sentencer can reconsider and properly weigh his youth as a mitigating factor. (ECF No. 1 at 69-70.)

Phillips raised these two claims, among others, in a second state post-conviction petition, filed on November 17, 2014, only months after *Hall* was decided. (ECF No. 1-1.) The trial court dismissed the petition on February 23, 2015. (ECF No. 1-6.) The state court of appeals affirmed that judgment on March 23, 2016. (ECF No. 1-7.) Phillips sought discretionary review in the Ohio Supreme Court on May 9, 2016. (ECF No. 1-8.) The court declined jurisdiction over the matter on February 22, 2017. *State v. Phillips*, Ohio Supreme Court Case No. 2016-0706.

On January 27, 2017, Respondent filed a motion to transfer Phillips' third habeas petition to the Sixth Circuit pursuant to 28 U.S.C. §1631 for a determination of whether the petition is barred as a "second or successive" petition under AEDPA's § 2244(b). (ECF No. 5.) Phillips filed a responsive brief opposing the motion (ECF No. 9), to which Respondent replied (ECF No. 10).

## II. Analysis

Under the gatekeeping provisions of § 2244(b), AEDPA requires state prisoners to obtain authorization from the appropriate federal court of appeals before he or she may file a "second or successive" habeas petition in federal district court. 28 U.S.C. § 2244(b)(3). The provision's requirements for filing successive petitions are exacting,[2] serving AEDPA's goal of bringing finality to state-court judgments by preventing the repeated filing of habeas petitions that attack the prisoner's underlying conviction. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996);

---

[2] Under § 2244(b), claims in a "second or successive" petition that a petitioner had previously presented in a federal habeas petition must be dismissed. 28 U.S.C. § 2244(b)(1). Claims in a "second or successive" petition that a petitioner had not previously presented also must be dismissed unless the petitioner can make a prima facie showing that they rely either on a new and retroactive rule of constitutional law, or on new facts that could not have been discovered previously through the exercise of due diligence *and* show a high probability of actual innocence. 28 U.S.C. § 2244(b)(2), (b)(3)(C).

5

*McCleskey v. Zant*, 499 U.S. 467, 493-95 (1991). Without such authorization, the district court lacks jurisdiction to review the petition. 28 U.S.C. § 2244(b)(3)(A).

Respondent contends this Court lacks jurisdiction over Phillips' latest petition because Phillips did not first obtain permission from the circuit court to file a "second and successive" habeas corpus petition as required by § 2244(b)(3). (ECF No. 5 at 3.) She argues that Phillips' petition is "second or successive" because it attacks the same state-court judgment he attacked in his first and second petitions, and due to this "readily discernable procedural fact," the "authority of this Court is limited to transferring this action to the Sixth Circuit" for authorization. (ECF No. 5 at 1, 4.)

Phillips responds that this Court has jurisdiction to make a preliminary determination of whether his petition is successive within the meaning of § 2244(b). (ECF No. 9 at 10-12.) He further argues that his petition is not successive because it asserts claims that were not ripe for federal habeas review when he filed his prior habeas petitions. (ECF No. 9 at 1-3.)

### A. This Court's Jurisdiction Under § 2244(b)

As support for her argument that this Court's authority is limited to transferring Phillips' petition to the circuit court, Respondent cites *Burton v. Stewart*, 549 U.S. 147 (2007), and *In re Smith*, 690 F.3d 809 (6th Cir. 2012). (ECF No. 5 at 1, 3.) She quotes the following language in *Burton*:

> In short, Burton twice brought claims contesting the same custody imposed by the same judgment of a state court. As a result, under AEDPA, he was required to receive authorization from the Court of Appeals before filing his second challenge. Because he did not do so, the District Court was without jurisdiction to adjudicate it.

*Burton*, 549 U.S. at 153. And she points to the Sixth Circuit's statement in *In re Smith* that its prior decision in *In re Sims*, 111 F.3d 45 (6th Cir. 1997), "instructs district courts to transfer only

'successive' petitions to [the circuit] court for want of jurisdiction under 28 U.S.C. § 1631 rather than dismiss them outright." *Id*. at 810. But these cases do not help her.

It is true, as noted above, that § 2244(b)(3) requires district courts to transfer "second or successive" habeas petitions to the circuit court for authorization. In *Sims*, as in *Burton*, the court held:

> [W]hen a prisoner has sought § 2244(b)(3) permission from the district court, or when a second or successive petition for habeas corpus relief . . . is filed in the district court without § 2244(b)(3) authorization from this court, the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631.

*In re Sims*, 111 F.3d at 47. But neither of these cases hold, as Respondent suggests, that once presented with a "readily discernible" successive petition – here, because Phillips' numerically third petition attacks the same state-court judgment as his original petition – a district court must automatically transfer the petition to the circuit court for authorization without first reviewing the petition.

Indeed, the Sixth Circuit expressly held otherwise in *Smith*. In that case, the Sixth Circuit clarified its *Sims* holding. It explained that since *Sims* was decided, a long line of Supreme Court cases has clarified the meaning of "successive" for purposes of § 2244(b) and made it clear that "a district court may (and should) rule on newly ripe claims and is 'not required to get authorization' from the court of appeals before doing so." *Id*. at 810 (quoting *Stewart v. Martinez–Villareal*, 523 U.S. 637, 644 (1998)). Based on this precedent, the court held that a district court has jurisdiction to determine "in the first instance" whether a habeas petitioner's second petition is "second or successive" within the meaning of § 2244(b). *Id*. If the district court finds the petition successive, as *Burton* and *Smith* declare, it must be transferred. *Id*. But if it finds the petition non-successive, the district court needs no authorization from the court of

7

appeals to consider it. *Id*. at 809-10 (citing *Martinez-Villareal*, 523 U.S. at 642 (holding "no need for [petitioner] to apply for authorization to file a second or successive petition" from court of appeals because petition not successive); *Magwood v. Patterson*, — U.S. —, 130 S. Ct. 2788, 2796 (2010) (holding district court did not err in considering merits of new petition without prior authorization because petition was not successive); *Burton v. Stewart*, 549 U.S. 147, 153 (2007) (holding district court lacked jurisdiction to review new petition because it was successive and therefore required authorization); *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) (holding district court properly considered merits of new petition because not successive; no prior involvement from court of appeals)).

Accordingly, this Court has jurisdiction to make a preliminary determination as to whether Phillips' third habeas corpus petition is "successive" and therefore subject to § 2244(b)'s gatekeeping requirements, or non-successive, in which case, the Court may consider it without the circuit court's authorization.

### B. "Second or Successive" Under § 2244(b)

Respondent argues that Phillips' petition – asserting claims that his death sentence is unconstitutional because he was just nineteen years old at the time of his underlying crime and trial – is "second or successive" because "it attacks the same state court judgment which was upheld after full adjudication of his first two habeas petitions . . . ." (ECF No. 5 at 3-5.) The term "second or successive" is not defined in § 2244(b). But the Supreme Court repeatedly has rejected a strict rule that a numerically second, or "second-in-time," habeas petition is automatically "second or successive" under § 2244(b) just because it challenges the same state-court judgment as the petitioner's prior habeas petition. *See, e.g., Magwood v. Patterson*, 561 U.S. 320, 335 n.11 (2010) ("This case does not require us to determine whether § 2244(b)

applies to every application filed by a prisoner in custody pursuant to a state-court judgment if the prisoner challenged the same state-court judgment once before. Three times we have held otherwise." (citing *Slack v. McDaniel*, 529 U.S. 473, 487 (2000); *Martinez -Villareal*, 523 U.S. at 643; *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007))). Instead, the Court considers the phrase "second or successive" a "term of art given substance" by the Court's habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486 (2000).

Most recently, in a series of cases decided over the past decade, the Supreme Court "has confirmed that a numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010). In *Stewart v. Martinez –Villareal* and later in *Panetti v. Quarterman*, the Court held that the statutory bar on "second or successive" applications does not apply to claims raised under *Ford v. Wainwright*, 477 U.S. 399 (1986), prohibiting the execution of insane prisoners, filed after the state has obtained an execution warrant. *Martinez -Villareal*, 523 U.S. at 640 (as to an identical, previously filed *Ford* claim); *Panetti*, 551 U.S. at 947 (as to a *Ford* claim that had not been presented in an earlier petition). This exception is based on the ripeness doctrine, permitting a petitioner to file what is functionally a first petition as to a previously unripe claim that becomes ripe only when execution is imminent, because an individual's competency to be executed cannot properly be assessed until that time. *See Martinez -Villareal*, 523 U.S. at 645 ("Respondent brought his claim in a timely fashion, and it has not been ripe for resolution until now."); *Panetti*, 551 U.S. at 945 ("We conclude, in accord with this precedent, that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe."). The

Court has explained that this exception addresses pragmatic concerns, as "[i]nstructing prisoners to file premature claims, particularly when many of these claims will not be colorable even at a later date, does not conserve judicial resources, 'reduc[e] piecemeal litigation,' or 'streamlin[e] federal habeas proceedings.'" *Panetti*, 551 U.S. at 946 (quoting *Burton v. Stewart*, 549 U.S. 147, 154 (2007) (per curiam)).

Phillips relies on *Panetti* and *Martinez-Villareal*'s ripeness theory here in arguing that his petition is not successive. He contends his claims are newly ripe and therefore non-successive for two reasons: the "cumulative effect" of new law and the imminence of his execution date.

Phillips first asserts that his "age-based claims are premised in part on the cumulative effect of changes in the law" that began two years after his original habeas petition was filed in 2003. (ECF No. 9 at 4.) He cites to the Supreme Court decisions in *Roper v. Simmons*, 543 U.S. 551 (2005) and *Hall v. Florida*, 134 S. Ct. 1986 (2014), and cases interpreting those decisions. (ECF No. 9 at 4.) In *Roper v. Simmons*, the Court held that the execution of individuals who were under eighteen years of age at the time of their crimes is prohibited by the Eighth and Fourteenth Amendments. *Roper*, 543 U.S. at 578. It noted three general differences between juveniles under eighteen and adults that prevent juveniles from being "classified among the worst offenders": their lack of maturity and underdeveloped sense of responsibility; their susceptibility to negative influences and outside pressures; and the fact that their personality traits are more transitory and less fixed. *Id*. at 569. In *Hall v. Florida*, the Court held that Florida's rule establishing a strict cutoff for I.Q. scores, above which an individual could not be considered intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), created an unacceptable risk that persons with intellectual disability would be executed in violation of the Eighth Amendment. *Hall*, 134 S. Ct. at 2001.

Phillips contends that *Roper* and *Hall*, taken together, created "legal and factual predicates" for his age-related claims that "were unripe at the time of filing of his original petition and could neither have been raised nor properly adjudicated in those earlier proceedings." (ECF No. 9 at 5-6.) In *Roper*, he explains, the Supreme Court recognized that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage[.]'" *Roper*, 543 U.S. at 569 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)). In doing so, Phillips argues, the Court expanded on *Atkins* by

> rais[ing] the age bar to protect persons with a transient condition: youth. Like intellectual disability, youth is a condition defined by hallmark characteristics which impute a disability onto its possessor, through no fault of their own. And like intellectually disability, youth is a condition not a number.

(ECF No. 9 at 6.) In *Hall*, Phillips notes, the Court stressed that "'[i]ntellectual disability is a condition, not a number.'" *Hall*, 134 S. Ct. at 2001. He claims the Court's position on this issue

> implicitly recognized that arbitrary numerical cutoffs for application of a categorical ban against capital punishment can themselves be unconstitutional if they fail to reliably include all persons who can fairly demonstrate, with valid scientific evidence, that they share the condition that is addressed by the categorical ban.

(ECF No. 9 at 5.)

Furthermore, Phillips argues, courts have applied the *Panetti* and *Martinez -Villareal*'s ripeness theory outside the context of *Ford* claims. (ECF No. 9 at 4.) He cites the Sixth Circuit's decision in *In re Jones*, 652 F.3d 603 (6th Cir. 2010), in which the court, relying on *Panetti,* found a habeas petitioner's *ex post facto* claim was not " successive" and therefore did not require circuit court authorization. *Id*. at 605. The court explained:

> The same principles [as those relied upon in *Panetti*] govern Jones's *ex post facto* claim, which challenges the cumulative effect of amendments to Michigan's parole system, the

11

last of which took effect in 1999—two years after Jones's initial habeas petition was filed. Like the *Ford* claims at issue in *Panetti* and *Martinez–Villareal*, Jones's *ex post facto* claim was unripe when his initial petition was filed—the events giving rise to the claim had not yet occurred. And, as in *Panetti*, no useful purpose would be served by requiring prisoners to file *ex post facto* claims in their initial petition as a matter of course, in order to leave open the chance of reviving their challenges in the event that subsequent changes to the state's parole system create an *ex post facto* violation.

*Id*. The court noted in *Jones* that several other circuit courts have similarly concluded that § 2244(b)'s restrictions on "second or successive" petitions do not apply to a numerically second petition challenging a parole determination or disciplinary proceeding that occurred after the prisoner's initial petition was filed. *Id*. at 605-606.[3]

Phillips also contends that this third petition presents claims that are newly ripe because his execution is now imminent. (ECF No. 9 at 7.) He argues that because the Eighth Amendment prohibits the "infliction" of cruel and unusual punishments, the "assessment of whether Phillips' death sentence conforms with the constitutional prohibition . . . includes questions which could neither have been asked nor answered until this moment in time." (ECF No. 9 at 7 (citing *Atkins*, 536 U.S. at 311 ("A claim that punishment is excessive is judged not by the standards that prevailed . . . when the Bill of Rights was adopted, but rather by those that *currently prevail*.") (emphasis added)) .)

Respondent replies that Phillips' arguments regarding the ripeness of his new claims is an "attempt to skirt" § 2244(b)'s bar against successive petitions. (ECF No. 10 at 2.) She contends

---

[3] The court cited: *In re Cain*, 137 F.3d 234, 236–37 (5th Cir. 1998) (challenge to disciplinary revocation of good-time credits); *Crouch v. Norris*, 251 F.3d 720, 723–24 (8th Cir. 2001) (challenge to parole determination); *Hill v. Alaska*, 297 F.3d 895, 897–99 (9th Cir. 2002) (challenge to parole determination); and *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005) (noting that a challenge to a parole determination would not constitute a "second or successive" petition under § 2244 if "the claim had not arisen or could not have been raised at the time of the prior petition," but holding prisoner's claim barred because the parole board had rendered an identical determination before his initial petition was filed). *In re Jones*, 652 F.3d at 606.

Phillips actually is "invit[ing] this Court to ignore the requirement that he seek permission to file his successive habeas petition, and instead find that the rule of [*Roper*] should be extended to persons under the age of twenty-one." (ECF No. 10 at 2.) She further notes that Phillips could have raised his claims in his first federal habeas petition when *Roper* was decided in 2005, presumably because this Court did not issue its judgment on his original petition until September 2006. (ECF No. 10 at 2.)

I disagree with Respondent that Phillips' contention that his petition is not successive for purposes of § 2244(b) is really an attempt to persuade me to rule on the merits of Phillips' claims. A determination that Phillips' petition is non-successive would not require any consideration of the merits of Phillips' claims. Respondents' argument that Phillips could have raised this claim after *Roper* was decided in 2005 also is unpersuasive. Phillips' claims also rely on *Hall*, which was decided in 2014.

I do agree with Respondent, however, that Phillips' ripeness argument must be closely examined. Courts have been reluctant to expand the "small subset of permissible *non*-successive petitions" given § 2244(b)'s gatekeeping function. *See Leal Garcia v. Quarterman*, 573 F.3d 214, 222 (5th Cir. 2009) (emphasis original).

The Fifth Circuit decision in *Leal Garcia v. Quarterman, supra,* is instructive. In that case, the court concluded that a Mexican national petitioner's numerically second habeas petition asserting a claim based on the Texas courts' refusal to review his claim that the state had violated the Vienna Convention's guarantee of consular access before convicting him of capital murder and sentencing him to death was not successive within the meaning of § 2244(b). *Leal Garcia*, 573 F.3d at 224. The State had argued that the petition was successive because the International Court of Justice (ICJ) had issued a decision holding the United States in violation of the

13

Convention four months before the district court ruled on the petitioner's initial habeas petition; the petitioner therefore could have amended his petition to include the consular-access claim. *Id*. at 219. The petitioner maintained that his second petition was not successive because his claim was previously unavailable to him; it did not arise until President George W. Bush signed a declaration ordering state compliance with the ICJ's decision, and the Texas courts refused to afford review, both of which occurred after the original petition was resolved. *Id*. at 220.

The Fifth Circuit rejected the petitioner's argument that, based on an earlier Fifth Circuit opinion, "a petition is non-successive if it rests on a rule of constitutional law decided after the petitioner's first habeas proceedings because such a claim would not have been previously available" as too broad in light of § 2244(b)'s "narrow" definition of "successive" and the provision's gatekeeping purpose. *Id*. at 221. The court explained that "[n]ewly available claims based on new rules of constitutional law (made retroactive by the Supreme Court)" and "claims based on a factual predicate not previously discoverable" are both subject to § 2244(b) and therefore both previously unavailable *and* "successive" under that provision. *Id*. It emphasized that prisoners' "repeated attacks" of their underlying judgments, "which often take on new forms as the legal landscape shifts, . . . are the evil against which AEDPA is directed . . . ." *Id*. at 221-22. But the court recognized that there is a "small subset" of previously unavailable claims that do not compromise AEDPA's goals and are not considered "successive." *Id*. at 222. It observed:

> Later habeas petitions attacking the same judgment that was attacked in a prior petition tend to be labeled successive and must meet the standards for authorization under § 2244. In contrast, later habeas petitions attacking distinct judgments, administration of an inmate's sentence, a defective habeas proceeding itself, or some other species of legal error-when the error arises after the underlying conviction-tend to be deemed non-successive. In essence, if the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for

the attack was not. If, however, the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.

*Id*. (footnotes providing citations omitted).

Applying this test, the Fifth Circuit determined that Garcia's second petition was non-successive. *Id.* It found the petition did not "rely on some novel legal basis to again attack his conviction," which would make it successive; instead, it "allege[d] a defect that arose . . . after his conviction." *Id*. Although the ICJ decision relating to consular access was issued while the petitioner's original petitioner was pending, it explained, the President's declaration was not issued until after his first petition was denied, and the defect the second petition was attacking – the Texas courts' refusal to review his conviction – did not occur until well after proceedings on his first petition had concluded. *Id*.

At least two other circuit courts – the Eleventh and Fourth Circuits – have found the court's reasoning in *Leal Garcia* "compelling" and applied its test to determine whether a second petition fits among the "small subset of unavailable claims that could not reasonably be categorized as 'successive.'" *Stewart v. United States*, 646 F.3d 856, 861 (11th Cir. 2011) (agreeing with *Leal Garcia*'s approach, finding it "consonant with the Supreme Court's reasoning in *Panetti*," and holding second petition challenging state court vacatur of a predicate conviction non-successive); *see also United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014) (finding reasoning of *Stewart, supra,* which relied on *Leal Garcia*, "compelling" and holding second petition not successive where facts supporting sentencing claim did not exist at time of first petition).

Applying the Fifth Circuit's test here, Phillips' third petition more reasonably fits within the category of successive petitions that are "repeated attacks" on an underlying state-court

judgment, only in a "new form" assumed "as the legal landscape [has] shift[ed]," rather than the category of non-successive "petitions attacking distinct judgments, administration of an inmate's sentence, a defective habeas proceeding itself, or some other species of legal error [that] arises after the underlying conviction . . . ." *Leal Garcia*, 573 F.3d at 221-22. Phillips' latest petition challenges the constitutionality of his death sentence given his age when he committed the capital offense. Phillips' original petition similarly challenged the constitutionality of his sentence given the strength of the mitigating factors presented to the jury and state courts, including his youth and immaturity at the time of his crime. What is new in this petition is not a specific defect or legal error that arose after the original petition was resolved (like the Texas courts' refusal to review a newly ripe claim in *Leal Garcia*), but the "novel legal basis" Phillips presents for his age-related claims. *Id*. at 222. Presumably, countless new claims for habeas corpus relief can – and will – be derived from the "cumulative effect" of new constitutional law, evolving science, and prevailing standards of decency. But to classify such claims when presented in a later petition as newly ripe and therefore non-successive under *Panetti* and *Martinez –Villareal* would undermine the gatekeeping function of § 2244(b) without serving *Panetti*'s pragmatic concerns of conserving judicial resources, reducing piecemeal litigation, or streamlining federal habeas proceedings.

Accordingly, Phillips' third petition is "second or successive" and must be transferred to the Sixth Circuit for authorization pursuant to AEDPA's § 2244(b)(3)(A).

### III. Conclusion

For the reasons stated above, I find that Petitioner Ronald Phillips' Petition for Writ of Habeas Corpus (ECF No. 1) is "second or successive" within the meaning of 28 U.S.C. § 2244(b). I therefore grant Respondent's motion to transfer (ECF No. 5), and hereby orders the

Clerk to transfer the case to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1631 for a determination of whether Phillips may proceed.

    IT IS SO ORDERED.

Dated: June 30, 2017

s/ Jeffrey J. Helmick
JEFFREY J. HELMICK
UNITED STATES DISTRICT JUDGE